```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/23/10
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
                                  :

LISA PRICE,                      :
                                  :

               Plaintiff,    :
                                  :    07 Cv. 11318 (BSJ)(MHD)
        v.                 :
                                  :    **Opinion and Order**

THE MOUNT SINAI HOSPITAL, MEGAN MORGAN, :
and MARIO NOZZOLILLO,              :
                                  :
               Defendants.   :
----------------------------------------x
BARBARA S. JONES
UNITED STATES DISTRICT JUDGE

    Plaintiff Lisa Price brings this lawsuit against the Mount

Sinai Hospital ("Mount Sinai") and its employees Megan Morgan

("Morgan") and Mario Nozzolillo ("Nozolillo") (collectively, the

"Defendants") for employment discrimination on the basis of race

and gender, hostile work environment, and retaliation under

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§ 2000e-2 ("Title VII"), New York State Human Rights Law

("NYSHRL") Executive Law § 296, and New York City Human Rights

Law ("NYCHRL"), N.Y.C. Administrative Code § 8-101 *et seq.*[1];

violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 201 *et seq.*;

---

[1] "We have repeatedly noted that claims brought under New York State's Human
Rights Law are analytically identical to claims brought under Title VII."
Torres v. Pisano, 116 F.3d 625, 629 n.1 (2d Cir. 1997).  NYCHRL, however,
"explicitly requires an independent liberal construction analysis in all
circumstances, even where State and federal civil rights laws have comparable
language.  The independent analysis must be targeted to understanding and
fulfilling . . . [NYCHRL's] 'uniquely broad and remedial' purposes, which go
beyond those of counterpart State or federal civil rights laws."  Williams v.
New York City Housing Auth., 61 A.D.3d 62, 66, 872 N.Y.S.2d 27, 31 (1st Dep't
2009).

employment discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112 *et seq.*; intentional and negligent infliction of emotional distress in violation of New York common law; and harassment and hostile work environment under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff, a former employee of Mount Sinai, alleges that she was passed over for raises and promotions and ultimately fired as a result of her race, gender, disability, and protected conduct. Before the Court is Defendants' October 28, 2009 Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motion is GRANTED.

## STATEMENT OF FACTS[2]

Mount Sinai hired Plaintiff in September 1992 and promoted Plaintiff in December 1996 to Billing Expediter in the Department of Pediatrics. Def.'s Rule 56.1 Stmt. ("Def.'s 56.1") ¶ 2, 17; Pl.'s Response Def.'s Rule 56.1 Stmt. Pl.'s Further Rule 56.1 Stmt. ("Pl.'s 56.1") 2, 17. Plaintiff satisfactorily performed her job duties and received merit pay increases from 1996 until 2000. Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18. Between 2001 and her termination, Plaintiff did not receive a raise or promotion, despite receiving satisfactory performance evaluations. Pl.'s 56.1 ¶¶ 18, 52. In September 2003,

---

[2] The following facts are either undisputed or resolved in favor of Plaintiff.

Plaintiff felt overworked, and as result suffered from migraines, problems sleeping, gastrointestinal problems, depression, panic attacks, and back pain.  Def.'s 56.1 ¶¶ 24-25; Pl.'s 56.1 ¶¶ 24-25.

In September 2003, Plaintiff complained to her supervisors about these issues.  Def.'s 56.1 ¶ 24; Pl.'s 56.1 ¶ 24.

On March 12, 2004, Morgan, one of Plaintiff's supervisors, greeted Plaintiff and claims she did not hear a response. Def.'s 56.1 ¶¶ 26-27; Pl.'s 56.1 ¶¶ 26-27.  Morgan then grabbed Plaintiff's arm and had a meeting with Plaintiff, wherein Plaintiff complained of overwork, and Morgan told Plaintiff she was free to resign.  Def.'s 56.1 ¶¶ 28-31.  Pl.'s 56.1 ¶ 28-31. Plaintiff complained to Daniel Kearney ("Kearney"), Senior Labor Relations Representative, about Morgan's touching her arm and about having been passed over for raises and promotions.  Def.'s 56.1 ¶ 32; Pl.'s 56.1 ¶ 32.

On March 16, 2004, Morgan called Plaintiff to find out whether she wanted to continue to work in the Department, resign, or transfer.  Def.'s 56.1 ¶ 35; Pl.'s 56.1 ¶ 35.  Rather than respond, Plaintiff met with her doctor, received a note stating she was medically unable to work until April 9, 2004, submitted the note to Nozolillo, another of Plaintiff's supervisors, and took a leave of absence.  Def.'s 56.1 ¶¶ 36-38; Pl.'s 56.1 ¶¶ 36-38.

On or about March 18, 2004, Treymane Cunningham ("Cunningham"), Operations Supervisor, sent Plaintiff a letter stating that her leave would be charged against her 12 week FMLA entitlement, which provided Plaintiff with 12 weeks of unpaid leave while protecting her job.  However, Plaintiff never received the letter, had accumulated more than 100 days of paid time off, and never applied for FMLA.  Def.'s 56.1 ¶ 39; Pl.'s 56.1 ¶ 39; Am. Compl. ¶¶ 20, 25.  On April 6, 2004, Plaintiff submitted a note from her doctor to extend her leave until April 19, 2004.  Def.'s 56.1 ¶ 40; Pl.'s 56.1 ¶ 40.  On April 14, 2004, Plaintiff submitted a note from her doctor to extend her leave until July 12, 2004.  Def.'s 56.1 ¶ 41; Pl.'s 56.1 ¶ 41.

On April 21, 2004, Cunningham sent Plaintiff a letter, notifying her that July 12, 2004 was beyond the 12-week FMLA expiration date and that she would be terminated on June 18, 2004 due to operational needs of the Department.  Def.'s 56.1 ¶ 42; Pl.'s 56.1 ¶ 42.  Plaintiff was terminated on June 18, 2004.  Def.'s 56.1 ¶ 43; Pl.'s 56.1 ¶ 43.

Plaintiff subsequently filed with the Equal Employment Opportunity Commission ("EEOC") and the City of New York Commission on Human Rights ("NYCCHR").  Pl.'s 56.1 ¶ 75.  The NYCCHR issued a probable cause finding, and the EEOC issued a right to sue notice.  Pl.'s 56.1 ¶¶ 77-78; Pl. Tr. 373.

Plaintiff proceeded to federal court.  Pl.'s 56.1 ¶ 79.
Defendants now move for Summary Judgment.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary
judgment may not be granted unless all of the submissions taken
together show that there is no genuine issue of material fact
and that the moving party is entitled to judgment as a matter of
law.  The moving party bears the burden of demonstrating the
absence of a material factual question. In making this
determination, a court must view all facts in the light most
favorable to the non-moving party, resolving all ambiguities and
drawing all inferences against the moving party.  Sista v. CDC
Ixis North America, Inc., 445 F.3d 161, 169 (2d Cir. 2006).
Although the Second Circuit has emphasized the need for district
courts to act with caution when considering whether to grant
summary judgment to an employer in an employment discrimination
case, a plaintiff must provide more than "conclusory allegations
. . . and show more than some metaphysical doubt as to the
material facts."  Gorzynski v. Jetblue Airways Corp., 596 F.3d
93, 101 (2d Cir. 2010) (internal citations and quotations
omitted).  A defendant will be entitled to summary judgment
unless the plaintiff "can point to evidence that reasonably
supports a finding of prohibited discrimination."  Joseph v.

Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (citations and quotations omitted).

**DISCUSSION**

Plaintiff's complaint states ten causes of action: (1) race discrimination under Title VII, NYSHRL, and NYCHRL; (2) discriminatory harassment and hostile work environment due to race under Title VII, the ADA, NYSHRL, and NYCHRL; (3) gender discrimination under Title VII, NYSHRL, and NYCHRL; (4) discriminatory harassment and hostile work environment due to gender under Title VII, NYSHRL, and NYCHRL; (5) violation of the EPA; (6) disability discrimination under the ADA; (7) intentional infliction of emotional distress; (8) negligent infliction of emotional distress; and (9) retaliation under Title VII, the ADA, NYSHRL, and NYCHRL; and (10) discriminatory harassment and hostile work environment under the FMLA.

**1. Claims One and Three: Race and Gender Discrimination**

*a. Legal Standard*

Claims of employment discrimination brought under Title VII are examined under the burden-shifting framework of McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973). Under this analysis, the plaintiff must first establish a *prima facie* case of discrimination based on race or gender. If a plaintiff establishes the required elements, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason"

6

for the allegedly discriminatory act.  Farias v. Instructional Sys., 259 F.3d 91, 98 (2d Cir. 2001) (citation omitted).  If the defendant can provide such a reason, the burden shifts back to plaintiff to point to evidence that "reasonably supports a finding of prohibited discrimination." Id. (citation and quotation omitted).  If plaintiff is unable to provide such evidence, a defendant will be entitled to summary judgment.  Id.

To establish a prima facie case, Plaintiff must demonstrate that (1) she is a member of a protected class; (2) she was qualified for the position or is performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent.  Id.

To establish an inference of discriminatory intent, Plaintiff "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [her] version of the events is not wholly fanciful." Golden Pac. Bancorp v. F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004) (citations and quotations omitted).  Plaintiff "must be able to demonstrate admissible evidence sufficient to permit an inference of discriminatory motive." Williams v. Alliance Nat'l Inc., No. 98 Civ. 7984 (RCC), 2001 U.S. Dist. LEXIS 2904, at *11 (S.D.N.Y. Mar. 19, 2001) (citations omitted), aff'd No. 01 Civ. 7350, 2001 U.S. App. LEXIS 25143 (2d Cir. Nov. 19, 2001).

7

b. *Analysis*

As evidence of discriminatory intent, Plaintiff asserts her qualifications for the raises and promotions and asserts that less qualified non-black, males received such promotions and raises.

Plaintiff's claim that she was qualified for the promotions and raises is supported only by the fact that she received no negative feedback in her performance evaluations for her job as Billing Expediter.  Decl. of Gregory R. Preston Ex. D.  However, the claim is undermined on two grounds.  First, Morgan, the individual who made the decision to hire Plaintiff, testified that Plaintiff did not receive a raise or promotion in 2003 because she was not a top performer.  Morgan Decl. ¶ 6; see also Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997) (attributing special significance "when the person who made the decision to fire was the same person who made the decision to hire").  Second, the evaluations were not entirely positive.  Plaintiff was noted to meet, but not exceed, expectations for the years in question, and her discontent was also noted.  See Decl. of Gregory R. Preston Ex. D.

Plaintiff's claim that less qualified, non-black males received promotions and raises is also undermined.  Plaintiff identifies five non-black males who received promotions and raises: Stephen Steinberg ("Steinberg"), Robert Cleary

8

("Cleary"), Nozolillo, Jerry Bruno ("Bruno"), and an individual identified as "Aaron Boyle." There is no evidence that any of the five were less qualified, non-black males who received raises or promotions instead of Plaintiff. Furthermore, there is evidence that four black females were given promotions and raises during the complained of time period: Marcella Fulton ("Fulton"), Zepherine A. Donaldson ("Donaldson"), Darnett Patrick ("Patrick"), and Sara Yearwood ("Yearwood").

Steinberg was promoted to Administrative Assistant Grade 5A in the Chairman's central office, but after Plaintiff was terminated. Cohen Decl. ¶ 11; Def.'s 56.1 ¶¶ 52, 69; Pl.'s 56.1 ¶¶ 52, 69. Plaintiff never applied to this position, which involved computer installation and maintenance rather than billing. Def.'s 56.1 ¶¶ 55, 69; Pl.'s 56.1 ¶¶ 55, 69. Steinberg was never an expediter and never performed any billing functions. Def.'s 56.1 ¶ 68; Pl.'s 56.1 ¶ 68.

Cleary was qualified for his promotion to Senior Billing Expediter III, because he, unlike Plaintiff, had worked in a previous job for ten years, including five years managing forty people at a large hotel. Morgan Decl. ¶¶ 7, 9. Furthermore, Clearly was promoted after Plaintiff took leave. Cohen Decl. ¶ 11; Def.'s 56.1 ¶ 52; Pl.'s 56.1 ¶ 52.

Nozzolillo was qualified to become Practice Manager during the complained of period, because he had a graduate internship

with Bruno, had experience in healthcare (including the
supervision of 25 interns), and was working towards an M.P.A,
all unlike Plaintiff.  Nozz. Tr. 8-9, 18-19.

Bruno received a raise and a change in job title during the
complained of period.  Def.'s 56.1 ¶ 54; Pl.'s 56.1 ¶ 54.  He
was qualified for this raise and change in title, because he had
received an M.P.A and had prior healthcare management
experience, unlike Plaintiff.  Morgan Dec. ¶¶ 7-10.

Lastly, the individual identified as "Aaron Boyle" is
actually a female employee named "Erin Boyle."  She is not a
non-black, male employee.  Def.'s 56.1 ¶ 47; Pl.'s 56.1 ¶ 47.

Further undermining Plaintiff's claims, Defendants
demonstrated that Marcella Fulton, a black female also working
in billing in Mount Sinai's Pediatrics Department, was promoted
to supervisor on two separate occasions, stepping down
voluntarily in the interim.  Def.'s 56.1 ¶ 58-59; Pl.'s 56.1 ¶
58-59; Cohen Decl. Ex. 10.  Furthermore, Zepherine A. Donaldson,
Darnett Patrick, and Sara Yearwood, also black, female Billing
Expediters in Mount Sinai's Pediatrics Department, all received
raises in the complained of period.  Cohen Decl. ¶ 10, Exs. 11,
12, 13; Pl. Tr. 200-04.

Because her bases for asserting discriminatory intent are
undermined, Plaintiff fails to "demonstrate admissible evidence
sufficient to permit an inference of discriminatory motive," and

10

therefore Plaintiff fails to establish a *prima facie* case of
race or gender discrimination under Title VII or NYSHRL.
Williams, 2001 U.S. Dist. LEXIS 2904, at *11.

The Court has also considered Plaintiff's arguments that
Defendants discriminated against Plaintiff under the more
liberal standard of the NYCHRL.  In light of the Local Civil
Rights Restoration Act of 2005 ("2005 Restoration Act"), New
York City, N.Y., Loc. Laws No. 85 (2005), we have independently
construed such claims in light of the "uniquely broad and
remedial purposes thereof."  New York City Administrative Code §
8-130; see also Abraham v. New York City Dep't of Educ., No. 09
Civ. 2238, 2010 U.S. App. LEXIS 19686, at *4 (2d Cir. Sept. 22,
2010).  Even considering this more liberal standard, Plaintiff
has failed to raise a genuine issue of material fact that she
was actually subjected to discriminatory treatment.

### 2. Claims Two, Four, and Ten: Discriminatory Harassment and Hostile Work Environment

#### a. *Federal and State Claims*

To state a hostile work environment claim, a plaintiff must
show that the workplace is "permeated with discriminatory
intimidation, ridicule, and insult that is sufficiently severe
or pervasive to alter the conditions of the victim's employment
and create an abusive working environment."  Harris v. Forklift
Sys., 510 U.S. 17, 21, (1993) (citations and quotations

11

omitted).  A plaintiff "must show not only that she subjectively perceived the environment to be abusive, but also that the environment was objectively hostile and abusive." Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006).  Plaintiff must also show that a "specific basis exists for imputing the conduct that created the hostile environment to the employer." Briones v. Runyon, 101 F.3d 287, 291 (2d Cir. 1996).

"[I]ncidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (citations and quotations omitted).  "To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." Id.  In addition, courts must also "consider the extent to which the conduct occurred" due to discrimination. Demoret, 451 F.3d at 149-50.  "Where reasonable jurors could disagree as to whether alleged incidents of . . . insensitivity or harassment would have adversely altered the working conditions of a reasonable employee, the issue of whether a hostile work environment existed may not properly be decided as a matter of law." Patterson v. Oneida, 375 F.3d 206, 227 (2d Cir. 2004).

Plaintiff concedes that the only contributing factors to the alleged hostile work environment were the lack of raises and

promotions and the resulting unequal pay.  Pl. Tr. 136-39.  She
further concedes that she has no memory of any supervisor making
any comment about any employee's race or gender.  Id..  Even
taken together with conflicts with Morgan and Plaintiff's
ultimate termination, these allegations do not establish
sufficiently "severe" or sufficiently "pervasive" conduct to
rise to the level of hostile work environment.  Harris, 510 U.S.
at 21.

      b. *New York City Claims*

    The Court construes Plaintiff's NYCHRL claim independently
from Plaintiff's state and federal claims, because the NYCHRL
"explicitly requires an independent liberal construction
analysis in all circumstances, even where State and federal
civil rights laws have comparable language.  The independent
analysis must be targeted to understanding and fulfilling . . .
[NYCHRL's] 'uniquely broad and remedial' purposes, which go
beyond those of counterpart State or federal civil rights laws."
Williams v. New York City Housing Auth., 61 A.D.3d 62, 66, 872
N.Y.S.2d 27, 31 (N.Y. App. Div. 2009).  Thus, less egregious
conduct than that required under Title VII may support a hostile
work environment claim under the NYCHRL.  The City law does not
impose "an overly restrictive 'severe or pervasive' bar," but
defendants can nevertheless "still avoid liability if they prove
that the conduct complained of consists of nothing more than

13

what a reasonable victim of discrimination would consider 'petty
slights and trivial inconveniences.'"  Id. at 41.

    Having reviewed the record separately with respect to
Plaintiff's municipal claim while keeping in mind the New York
City law's "uniquely broad and remedial" purposes, the Court
concludes that Plaintiff has failed to demonstrate any genuine
issue of material fact as to whether a hostile work environment
existed at Mount Sinai.  To the extent that the NYCHRL is more
liberal than its state or federal counterparts, Plaintiff has
still failed to frame any genuine issue of fact as to a hostile
work environment under the NYCHRL; the conduct alleged is far
from a borderline Title VII violation.  Id. ("[S]ummary judgment
will still be available where [employers] can prove that the
alleged discriminatory conduct in question does not represent a
'borderline' situation . . . .").

        c. FMLA Claims

    To the extent that Plaintiff's tenth claim, under the FMLA,
alleges a violation for having designated her leave as FMLA
leave rather than paid time off, Plaintiff is incorrect.  The
FMLA allows employees to substitute paid time off for FMLA
leave; however, it does not require that the employer
automatically designate leave as paid time off.  See 29 C.F.R. §
825.207.  If an employee decides to make such a substitution,
paid time off will run concurrently with unpaid FMLA leave,

pursuant to the employer's leave policy.  Id.  Plaintiff
inquired as to why her leave was being charged as unpaid FMLA
leave rather than paid time off; however, Plaintiff left the
issue unresolved, never thinking the leave was being charged as
paid time off.  Pl. Tr. 263-73.  Furthermore, since paid leave
runs concurrently with FMLA leave under the FMLA, if Plaintiff
had used her paid time off, it would not have extended the
amount of time for which her leave would be protected under the
FMLA.  See 29 C.F.R. § 825.207.

### 3. Claim Five: Violation of the EPA

A *prima facie* case under the Equal Pay Act consists of
three elements: (1) "the employer pays different wages to
employees of the opposite sex"; (2) "the employees perform equal
work on jobs requiring equal skill, effort, and responsibility";
and (3)) "the jobs are performed under similar working
conditions."  Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir.
1999) (citations and quotations omitted).

> Once a plaintiff has established a prima facie case of
> discrimination under the EPA, the burden then shifts
> to the defendant to demonstrate that the pay disparity
> is justified by (i) a seniority system; (ii) a merit
> system; (iii) a system which measures earnings by
> quantity or quality of production; or (iv) a
> differential based on any other factor other than sex.

Virgona v. Tufenkian Import-Export Ventures, Inc., No. 05 Civ.
10856 (GEL), 2008 U.S. Dist. LEXIS 72139, at *18-19 (S.D.N.Y.
Sept. 23, 2008) (citations and quotations omitted).  Upon proof

15

of such justification, a Plaintiff may establish the
justification to be pretext if "the employer has used the factor
[un]reasonably in light of the employer's stated purpose as well
as its other practices." Aldrich v. Randolph Cent. Sch. Dist.,
963 F.2d 520, 526 (2d Cir. 1992) (citation and quotation
omitted).

Plaintiff identifies two male employees who received higher
salaries: Steinberg and Cleary. Pl.'s Opp. 12-13. However,
Plaintiff fails to create a disputed issue of material fact as
to whether either employee's job requires comparable "skill,
effort, and responsibility."

Steinberg's job, unlike Plaintiff's, involved computer
installation and maintenance rather than billing. Def.'s 56.1 ¶
69; Pl.'s 56.1 ¶ 69. Steinberg was never an expediter and never
performed any billing functions. Def.'s 56.1 ¶ 68; Pl.'s 56.1 ¶
68.

Plaintiff asserts that Cleary's job as Senior Billing
Expediter required the same "skill, effort, and responsibility"
as Plaintiff's job as Billing Expediter. Pl.'s Opp. 12-13. As
support for this conclusion, Plaintiff cites only to testimony
by Nozolillo that he did not distinguish among billers in his
distribution of work. Nozolillo Tr. 25-26. However, Nozolillo
testified that Cleary was not among his billers. Nozolillo Tr.
29. Defendants' evidence demonstrates that Cleary's job as

16

Senior Billing Expediter required a different skill set and
carried different responsibilities from Plaintiff's job as
Billing Expediter.   Morgan Tr. 33-35.

### 4. Claim Six: Disability Discrimination

*a. Legal Standard*

To withstand summary judgment, a Plaintiff raising a
discrimination claim under the ADA must first present a prima
facie case of discrimination by demonstrating that: (1)
Defendants are subject to the ADA; (2) Plaintiff suffers from a
disability within the meaning of the ADA; (3) Plaintiff could
perform the essential functions of her job with or without
reasonable accommodation; and (4) Plaintiff was fired because of
her disability.   See Reeves v. Johnson Controls Worldwide
Servs., Inc., 140 F.3d 144, 149-50 (2d Cir. 1998). If a
plaintiff succeeds in establishing a prima facie case, the
burden shifts to the defendant to articulate "some legitimate,
nondiscriminatory reason" for Plaintiff's discharge.   See
Valentine v. Standard & Poor's, 50 F. Supp. 2d 262, 282
(S.D.N.Y. 1999) (citation and quotation omitted).  If the
defendant is able to do so, the plaintiff must then produce
evidence that "the reason proffered by [the defendant] is a
pretext for unlawful discrimination" and must raise "a genuine
issue of material fact . . . as to whether [the defendant's]
reason for discharging her is false and as to whether it is more

likely that a discriminatory reason motivated [the defendant] to make the adverse employment decision." Id. (citations and quotations omitted).

A person is "disabled" within the meaning of the ADA if he (1) has a physical or mental impairment that substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. See Reeves, 140 F.3d at 151 (citing 42 U.S.C. § 12102(2)). To be "substantially limited" under the ADA, an individual must be "unable to perform a major life activity that the average person in the general population can perform" or be "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity" compared to the average person. Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir. 1998), cert. denied, 119 S. Ct. 1253 (1999) (citing 29 C.F.R. § 1630.2(j)).

In determining whether an individual is substantially limited in performing a major life activity, the nature and severity of the impairment, the duration or expected duration of the impairment, and the actual or expected permanent or long term impact of the impairment should be considered. See 29 C.F.R. § 1630.2(j)(2).

b. Analysis

18

Plaintiff fails to establish a disputed issue of material fact as to whether she was substantially limited in performing a major life activity.  Plaintiff testifies as to various ailments, Pl. Tr. 119-20, 126, 247, 318-19, 332-33, but fails to explain how they limited any major life activity.  Plaintiff asserts that she had problems eating and sleeping and that "[s]leeping and eating are clearly major life activities." Pl.'s Mem. Law Opp. Def.'s Mot. Summ. J. ("Pl.'s Opp.") 8. However, Plaintiff's assertion as to problems eating are not supported by any evidence in the record.  As to problems sleeping, in order to survive summary judgment on that claim, Plaintiff must do more than assert the simple, common problem of difficulty falling and staying asleep.  See Colwell, 158 F.3d at 644; Sykes v. North Fork Bank, No. 07 Civ. 1102 (FB), 2009 U.S. Dist. LEXIS 117311, at *5 (E.D.N.Y. Dec. 16, 2009).  Plaintiff submits no evidence that her problems sleeping rose to the level of a substantial limitation on the major life activity of sleep. On the contrary, Plaintiff admits to her ability to perform most major life activities, Pl. Tr. 310-11, and that medication relieved most of her medical problems, including her sleep and stomach issues.  Pl. Tr. 318-22.

Similarly, Plaintiff has cited no evidence in the record to demonstrate that Mount Sinai perceived Plaintiff as disabled. That Mount Sinai granted a leave of absence is insufficient at

19

law to demonstrate that it perceived Plaintiff as disabled.
Kramer v. Hickey-Freeman, Inc., 142 F. Supp. 2d 555, 560
(S.D.N.Y. 2001); see also Ramirez v. N.Y. City Bd. of Educ., 481
F. Supp. 2d 209, 220 (E.D.N.Y. 2007); Graham v. Boehringer
Ingelheim Pharms., Inc., 451 F. Supp. 2d 360, 372 (D. Conn
2006); Rider v. GMC, No. 03 Civ. 0701C, 2006 U.S. Dist. LEXIS
34033, at *22-23 (W.D.N.Y. May 25, 2006); Ruhlmann v. Ulster
County Dep't of Soc. Servs., 234 F. Supp. 2d 140, 175 (N.D.N.Y
2002).

   **5. Claims Seven and Eight: Infliction of Emotional Distress**

      *a. Intentional Infliction of Emotional Distress*

   Plaintiff's allegations of intentional infliction of
emotional distress ("IIED") do not rise to the level of
outrageousness necessary to constitute IIED under New York law.
To state a claim of IIED under New York law a plaintiff must
show: "(1) extreme and outrageous conduct; (2) intent to cause,
or reckless disregard of a substantial probability of causing,
severe emotional distress; (3) a causal connection between the
conduct and the [in]jury; and (4) severe emotional distress."
Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001).
Whether the conduct at issue is sufficiently "outrageous" is
susceptible to determination as a matter of law.  Howell v. New
York Post Co., 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702, 596
N.Y.S.2d 350, 353 (1993).  This is a high standard that is

"rigorous" and "difficult to satisfy." Id. at 122 (quoting

Prosser and Keeton, Torts § 12, at 60-61 (5th ed.)). "Liability

has been found only where the conduct has been so outrageous in

character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and

utterly intolerable in a civilized community." Id. (quoting

Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 303, 461

N.Y.S.2d 232, 236, 448 N.E.2d 86, 90 (1983)); accord Conboy, 241

F.3d at 258. "Courts are reluctant to allow recovery under the

banner of intentional infliction of emotional distress absent a

'deliberate and malicious campaign of harassment or

intimidation.'" Cohn-Frankel v. United Synagogue of

Conservative Judaism, 246 A.D.2d 332, 332, 667 N.Y.S.2d 360, 362

(1st Dep't 1998) (quoting Nader v. Gen. Motors Corp., 25 N.Y.2d

560, 569, 307 N.Y.S.2d 647, 654, 255 N.E.2d 765, 770 (1970)). As

a result, "New York Courts are reluctant to allow [IIED] claims

in employment discrimination cases. The courts are wary of

allowing plaintiffs to recharacterize claims for wrongful or

abusive discharge . . . as claims for intentional infliction of

emotional distress." Stevens v. New York, 691 F. Supp. 2d 392,

399 (S.D.N.Y. 2009) (alterations in original) (citation and

quotation omitted).

Here, Plaintiff has failed to allege facts sufficient to

satisfy the first requirement of extreme and outrageous conduct

21

or the second requirement of intent to cause or reckless disregard of a substantial probability of causing severe emotional distress.  The facts alleged by Plaintiff, even when read in a light most favorable to Plaintiff, do not amount to extreme and outrageous conduct.  See Conboy, 241 F.3d at 258. Furthermore, Plaintiff cites to no facts on the record to demonstrate that Defendants acted with intent to cause or reckless disregard of a substantial probability of causing severe emotional distress.  See id.

> b. *Negligent Infliction of Emotional Distress*

A claim for negligence against one's employer is barred by the exclusivity provision of New York's Workers' Compensation Law.  N.Y. Workers' Comp. Law § 29(6) provides: "The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured . . . by the negligence or wrong of another in the same employ . . . ."  Thus, Plaintiff's claim of negligent infliction of emotional distress is barred by the statute.  See Jean-Louis v. Am. Airlines, No. 08 Civ. 3898 (FB), 2010 U.S. Dist. LEXIS 77292, at *8-9 (E.D.N.Y. July 30, 2010) (noting "Courts routinely dismiss workplace negligence claims, including claims based on harassment and infliction of emotional distress, in light of the exclusive remedy provision of the Workers' Compensation statute" and collecting cases); Pasqualini v.

22

MortgageIT, Inc., 498 F. Supp. 2d 659, 666-67 (S.D.N.Y. 2007)
(dismissing claims for grossly negligent hiring, supervision,
retention, and infliction of emotional distress as barred by the
exclusivity provision of New York Workers' Compensation Law).

   **6. Claim Nine: Retaliation**

      a. *Standard of Review*

   The Second Circuit has set out four elements of a *prima
facie* case of retaliation under Title VII:

> (1) the plaintiff participated in a protected
> activity; (2) the defendant knew of the protected
> activity; (3) the plaintiff experienced an adverse
> employment action, as defined by the Supreme Court in
> Burlington Northern & Santa Fe Ry. Co. v. White; and
> (4) a causal connection exists between the protected
> activity and the adverse employment action."

Blanc v. Sagem Morpo, Inc., No. 09 Civ. 3762, 2010 U.S.
App. LEXIS 20364, at *3 (2d Cir. Oct. 1, 2010) (internal
citation omitted).  If these four elements are met, "the
burden shifts to the defendant to articulate a legitimate,
nondiscriminatory reason for the alleged retaliatory acts.
. . ." Id.  Once articulated, "the burden shifts back to
the plaintiff to show circumstances that would be
sufficient to permit a rational factfinder to conclude that
the employer's explanation is merely a pretext for
impermissible retaliation." Id. at *3-4 (citation and
quotation omitted).

23

"Retaliation claims under the ADA are analyzed under the same burden-shifting framework as claims arising under Title VII." Valtchev v. City of New York, No. 09 Civ. 4145, 2010 U.S. App. LEXIS 23521, at *7 (2d Cir. Nov. 15, 2010).

>    b. *Federal and State Causes of Action*

Plaintiff claims she was denied raises, denied promotions, and ultimately terminated in retaliation for three protected activities. Pl.'s Opp. 11.

First, Plaintiff claims her FMLA claim was a protected activity in retaliation for which she was terminated. Defendants claim termination was not in response to seeking FMLA leave but rather was in response to her failure to return from leave in a timely manner and the need to fill her position. Plaintiff alleges this reason is pretext, because Morgan, who decided to terminate Plaintiff, never assessed whether there was a need to fill the position, and Mount Sinai substantially delayed in filling that position. However, Plaintiff submits no evidence of such delay. To the contrary, Defendants submit evidence that Mount Sinai began the search to replace Plaintiff soon after her discharge and that a replacement was promptly found. Kearny Tr. 96; Cunningham Decl. ¶ 7; Cohen Decl. ¶ 13, Ex. 18.

Second, Plaintiff claims retaliation in response to her workers' compensation claim.  The Court lacks jurisdiction over this claim, because the New York Workers' Compensation law provides that the exclusive remedy for such a retaliation claim lies with the Workers' Compensation Board.  Ridgway v. Metro. Museum of Art, No. 06 Civ. 5055 (SAS), 2007 U.S. Dist. LEXIS 27007, at *18, *26-27 (S.D.N.Y. Apr. 10, 2007); Benjamin v. Health and Hosps. Corp., No. 07 Civ. 2487 (KAM), 2009 U.S. Dist. LEXIS 83051, at *22 (E.D.N.Y. Sept. 11, 2009) (citing N.Y. Workers' Comp. Law § 120).

Third, Plaintiff claims retaliation in response to her EEOC and NYCCHR claims.  Both of these claims were made subsequent to her termination, so any adverse employment action could not have been causally connected to these protected activities.  See Pl.'s 56.1 ¶ 75; Diaz v. Weill Med. Coll., No. 02 Civ. 7380 (AJP), 2004 U.S. Dist. LEXIS 2054, at *74 (S.D.N.Y. Feb. 13, 2004); Benjamin, 2009 U.S. Dist. LEXIS 83051, at *31.

c. NYCHRL

With respect to Plaintiff's retaliation claims under the NYCHRL, this Court recognizes that in light of the 2005 Restoration Act and the recent First Department decision Williams v. New York City Housing Authority, we must construe the NYCHRL "more broadly than federal civil rights laws and the State HRL."  872 N.Y.S.2d at 36-37.  To establish a retaliation

25

claim under this more liberal standard, the analysis is similar to that of the federal and state law analysis, but the employee need not suffer "a materially adverse change in the terms and conditions of employment" as required by Title VII.  Id. at 34. Retaliation in "any manner" will suffice.  Id.  However, a plaintiff must still link the adverse action to a "retaliatory motivation."  Id. at 35.  Moreover, summary judgment is still appropriate where a defendant "can prove that the alleged discriminatory conduct in question . . . could only be reasonably interpreted as representing no more than petty slights or trivial inconveniences."  Kaur v. New York City Health and Hospitals Corp., 688 F.Supp.2d 317, 340 (S.D.N.Y. 2010) (alteration in original) (citation and quotation omitted).

This Court has engaged in an "independent analysis" of Plaintiff's claims under this standard and finds that no genuine issue of material fact has been raised indicating that Plaintiff actually suffered from an adverse employment action with the requisite retaliatory motive.  Plaintiff has failed to produce evidence that these alleged adverse actions were at all linked to a retaliatory motivation.  Therefore, even under the more liberal standard of the NYCHRL, Plaintiff's additional claims of adverse employment actions cannot constitute retaliation "in any manner" and therefore are dismissed.

## Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED.  The Clerk of the Court is directed to close the case.

SO ORDERED:

BARBARA S. JONES
UNITED STATES DISTRICT JUDGE


Dated:    New York, New York
          November 22, 2010